**COVINGTON**

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Amanda Kramer

Covington & Burling LLP
30 Hudson Yards
New York, NY 10001-2170
T +1 212 841 1223
akramer@cov.com

**Via ECF and Email**                                                December 27, 2025

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

<u>Re:</u>  <u>*United States* v. *Robert Sensi*, 25 Cr. 663 (PGG)</u>

Dear Judge Gardephe:

      Robert Sensi, through Counsel, respectfully moves for his release from custody on the proposed combination of conditions set forth below, pursuant to 18 U.S.C. § 3142(a).  As your Honor is aware, at Mr. Sensi's December 5, 2025, presentment and arraignment, Magistrate Judge Lehrburger denied Mr. Sensi's bail application without prejudice, remarking that he did not "know what stability there is to [Mr. Sensi's] ties in Florida without more, and that more potentially could come."  Tr. at 32:16–18.  In the intervening time, Counsel has assembled a detailed bail package, and Mr. Sensi's medical condition has deteriorated rapidly while incarcerated at the Metropolitan Detention Center ("MDC"), necessitating his transfer on Christmas Eve to ███████████ where he has remained handcuffed to his bed.  The proposed conditions of release, particularly when considered in light of Mr. Sensi's poor health and extensive medical conditions, are more than sufficient to reasonably ensure Mr. Sensi's appearance in Court and the safety of the community.

**Background**[1]

      Mr. Sensi is seventy-five years old and has been a resident of Boca Raton, Florida, where he has lived with his wife, Paola Ruiz Sosa.  Mr. Sensi has lived in South Florida since approximately 2014, prior to which he lived in the Washington, D.C. area for approximately 30 years.  Mr. Sensi moved from Washington, D.C. to Florida following a stroke in 2014, out of a desire to be closer to his son, Stefano Sensi, who is a master electrician and owns Sensi Electric, LLC, his own electrical business in Jupiter, Florida.

      In fact, on the eve of his arrest, Mr. Sensi and Ms. Sosa were in the process of moving out of his current residence, and moving in with Stefano Sensi, in light of Mr. Sensi's age and suite of chronic medical conditions, detailed in the following section.  This move had been

---

[1] Counsel has redacted sensitive information and will provide unredacted copies via email to Chambers and the Government, pursuant to your Honor's Individual Rules of Criminal Practice and Individual Rule of Civil Practice II.A.

COVINGTON

Page 2

contemplated for approximately three months, following an accident in which Mr. Sensi fell at his home and ███████████████████████████████████████████████████████████████. While Mr. Sensi remains in custody, Stefano has moved into this apartment consistent with the family's plan, and is now preparing the apartment for Mr. Sensi's and Ms. Sosa's arrival. Stefano, Mr. Sensi, and Ms. Sosa are all named in the lease.  This residence is close to ███████ ██████████, where Mr. Sensi attends weekly services, as well as the South Florida locations of ████████████████ and ████████████████, where Mr. Sensi receives frequent medical care.

## Medical History and Current Status

As noted, Mr. Sensi suffers from several severe, chronic medical conditions.[2]  In particular, Mr. Sensi has been diagnosed with ████████████████████████████████████████ ██████████████████████████████████████████████████.  Additionally, Mr. Sensi has a history of ██████ █████████████████████████████ that has permanently affected his balance, and contributed to the fall and injuries discussed above.

To manage these medical conditions, Mr. Sensi requires a battery of daily medications and regular treatment, without which his health will deteriorate.[3]  Mr. Sensi must also monitor his ███████████ several times daily at home, and his ████████████ approximately every three months with his PCP to determine whether he needs further care for his ██████████████████ ███████.  Counsel understands that Mr. Sensi has been unable to █████████████████ since arriving at the MDC; should he be returned to the MDC, it is unclear if he will be able to regularly monitor his ████████████.  Further, Counsel understands that the MDC has not provided Mr. Sensi with his ██████████████████████ medications.  Finally, Counsel understands that prior to his arrest, Mr. Sensi was beginning a course of treatment recommended by his PCP for his ██████████████, which would include ████████████████████ ██████████████████████████, in order to prevent his mobility from further decline.  It is unclear whether Mr. Sensi will receive such therapy in any facility, and Mr. Sensi's mobility is likely to deteriorate as a result.

Following visits to Mr. Sensi in the MDC on December 15 and 19, 2025, Counsel is of the view that the MDC was not providing Mr. Sensi with needed medical care, and that his health has been deteriorating as a result.  On December 24, 2025 – Christmas Eve – Mr. Sensi was transferred from the MDC to ████████████████████████████████████████, which transfer Counsel understands was done in light of concerns at MDC that Mr. Sensi may fall and injure himself.  Counsel further understands that Mr. Sensi has been bound to a hospital bed with restraints for 24 hours a day since arriving at ██████████, and that because of these restraints Mr. Sensi has experienced problems with his circulation, including tingling sensations in his hands.  As discussed below, this transfer confirms that the BOP is ill-equipped to handle Mr. Sensi's medical conditions, and also that incarceration at a hospital is an unacceptable alternative.  Mr.

---

[2] Counsel has obtained this information through conversations with Mr. Sensi and his family members.  Counsel has also submitted HIPAA requests to Mr. Sensi's various treating medical practices and can provide medical records upon receipt and the Court's request.

[3] These medications are detailed in the December 5, 2025 Pretrial Services report.

COVINGTON

Page 3

Sensi's medical conditions would be far more effectively treated at home with his son, wife, and doctors.

## The Proposed Bail Package

Counsel, on behalf of Mr. Sensi, proposes the following bail package. These proposed conditions will reasonably ensure his return to court and assuage any concerns that he could pose a danger to the community:

1. Home confinement at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, with GPS monitoring;

2. A $500,000 personal recognizance bond;

3. Co-signed by his son Stefano Sensi;

4. Secured by the equity in the house that Stefano Sensi owns, located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;[4]

    a) The appraised value of the home as of 2025 is $▮▮▮▮▮▮.

    b) There is a mortgage on the home, with a principal balance of about $▮▮▮▮▮▮.

5. Secured by the equity in Sensi Electric LLC, Stefano Sensi's electrician business;

6. Mr. Sensi's travel will be restricted to the Southern District of Florida and the Southern District of New York (to attend Court, meet with his Counsel, and attend medical appointments), as well as the Eastern District of New York, the District of New Jersey, and districts necessary for travel to and from New York and Florida;

7. Consistent with the conditions of his home confinement, Mr. Sensi's travel would be further limited to attend:

    a) Scheduled medical appointments,

    b) Religious services at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    c) Meetings with Counsel, and

    d) Court appearances;

---

[4] Counsel is willing to provide documentation for the appraisal and mortgage, should the Court request.

**COVINGTON**

Page 4

      8.      Mr. Sensi's passport is already in the custody of the Government, and can be provided to Pretrial Services, as appropriate; and

      9.      Any other standard conditions of pretrial supervision that this Court so provides.

### **Legal Standard**

A district court reviews *de novo* a magistrate judge's decision to release or detain a defendant. *See United States* v. *Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States* v. *Jones*, 566 F. Supp. 2d 288, 289–90 (S.D.N.Y. 2008). Ordinarily, a defendant is to be released pending trial unless the court finds that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant or the safety of any other person in the community. 18 U.S.C. § 3142(e). And in the event the court finds conditions are appropriate, the Bail Reform Act requires that the court impose "the least restrictive . . . condition, or combination of conditions, that will . . . reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(c)(1)(B).

In certain delineated circumstances, when there is probable cause to believe that the defendant committed a narcotics offense for which the maximum term of imprisonment is ten years or more, the bail statute establishes a rebuttable presumption that the defendant poses a danger to the community and will not appear for trial. *Id*. § 3142(e)(3)(A). The statute also applies this presumption where there is probable cause to believe that the defendant committed an offense under 18 U.S.C. § 956(a). *Id*. § 3142(e)(3)(B). In these circumstances, the presumption imposes on the defendant a "burden of production," while the "burden of persuasion" remains with the Government. *United States* v. *Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). This burden "is not heavy," *United States* v. *Stone*, 608 F.3d 939, 945 (6th Cir. 2010), and the defendant can satisfy this burden by "introduc[ing] some evidence contrary to the presumed fact in order to rebut the presumption", *United States* v. *Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991). *See also United States* v. *Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991) (same "some evidence" standard); *United States* v. *Dominguez*, 783 F.3d 702, 707 (7th Cir. 1986) (same); *United States* v. *Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (similar). Moreover, and notwithstanding the existence of the statutory presumption, the Supreme Court has observed that "liberty is the norm, and detention prior to trial . . . is the carefully limited exception. *United States* v. *Salerno*, 481 U.S. 739, 755 (1987).

Once the defendant has produced such evidence, "the presumption, rather than disappearing altogether, continues to be weighed along with [the] other factors to be considered when deciding whether to release a defendant." *Rodriguez*, 950 F.2d at 88. Those factors include: (1) the nature and circumstances of the offense, including whether the offense involves a controlled substance; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of any danger the defendant poses to the community. *See* 18 U.S.C. § 3142(g). At all times, the Government retains the ultimate burden of persuasion to establish that the defendant poses a danger to the community by clear and convincing evidence or a flight risk by a preponderance of the evidence. *Rodriguez*, 950 F.2d at 88.

COVINGTON

Page 5

### The Proposed Bail Package Addresses Flight Risk Concerns and Will Reasonably Ensure Mr. Sensi's Return to Court

Clear and convincing evidence demonstrates that Mr. Sensi does not pose a risk of flight. As detailed above, Mr. Sensi is seventy-five years old and in ill health. As noted, Mr. Sensi has become increasingly reliant on Stefano, his son, for medical care, to the point of having begun the process of moving in with Stefano immediately prior to his arrest. Mr. Sensi also has established relationships with medical providers in South Florida and regular treatments necessary to maintain his health that he cannot jeopardize by flight. The need to maintain these relationships and treatments "creates a powerful incentive to abide by any release conditions that the Court may impose." *United States* v. *Johnston*, No. 17 Cr. 46 (RMM), 2017 WL 4277140, at *6 (D.D.C. Sept. 22, 2017) (finding defendant rebutted the presumption of detention, and granting bail where "medical records establish that [defendant] has an acute and immediate need for further diagnostic and cancer treatment").

The Pretrial Services report dated December 5, 2025, further rebuts the presumption of detention, and recommends that bail is appropriate in this case. While Mr. Sensi acknowledges the Government's argument, presented at the bail hearing, that the report does not consider the weight of the Government's evidence or the seriousness of the alleged conduct, courts are entitled to consider Pretrial's recommendation and "assign[] it appropriate evidentiary weight in consideration of the § 3142(g) factors." *United States* v. *Nguyen*, No. 25 Cr. 506 (AT), 2025 WL 3157750, at *4 n.1 (S.D.N.Y. Nov. 12, 2025) (finding Pretrial Service's recommendation of "release and 'stringent provisions for [defendant's] release terms" contributed to evidence rebutting presumption of detention). Additionally, Mr. Sensi cooperated with law enforcement following his arrest, which further "militate[s] against his flight risk and instead demonstrate[s] that he is willing to participate in the judicial process," notwithstanding the alleged strength of the evidence against him. *Nguyen*, 2025 WL 3157750, at *4.

Finally, the practical requirements of the bail package proposed above – including home confinement, location monitoring, personal recognizance bonds, and surrender of travel documents – all demonstrate that Mr. Sensi will not flee custody. For one, Mr. Sensi's flight would have catastrophic consequences for his son, Stefano, whose home and business are offered as security for the bond. Additionally, home detention and location monitoring, two well-established tools utilized by Pretrial Services, provide sufficient mechanisms to impose "the least restrictive . . . combination of conditions, that will . . . reasonably assure [Mr. Sensi's] appearance." 18 U.S.C. § 3142(c)(1)(B). Finally, home confinement would permit Mr. Sensi to receive the necessary and regular medical care that the MDC and other alternative BOP facilities are ill-equipped to provide.

### The Proposed Bail Package Addresses Any Concerns with Respect to Dangerousness

"[A] defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *United States* v. *Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021). "The threat must also be considered in context." *Id.* at 1283 (citing *United States* v. *Tortora*, 922 F.2d 880, 888 (1st Cir. 1990)). In this case, clear and convincing evidence similarly establishes that Mr. Sensi does not pose such a concrete, prospective danger.

COVINGTON

Page 6

 Mr. Sensi does not own weapons and has never committed any violent offense. And while Mr. Sensi acknowledges the severity of the offenses charged in the Indictment and their corresponding mandatory minimum sentences, there is no indication in the Indictment, nor elsewhere, that Mr. Sensi actually possessed any weapons or narcotics, or that Mr. Sensi's comments may have been anything more than puffery. Similarly, there is no indication in the Indictment, nor elsewhere, that Mr. Sensi has maintained or otherwise cultivated ties with any members of the Cartel Jalisco Nueva Generación, beyond the alleged ties with CS-1, "who was posing as a member of the CJNG." Indictment ¶ 4. These considerations, taken together, indicate that it is highly unlikely that Mr. Sensi "in fact pose[s] a threat of committing violence in the future." *Munchel*, 991 F.3d at 1283–84 (vacating district court's determination of dangerousness despite defendants' participation in the January 6 riots at the U.S. Capitol and district court's observation that "[defendant's] alleged conduct indicates that he is willing to use force to promote his political ends"). Additionally, any "future risk [Mr. Sensi] poses to the safety of others and the community can be contained with stringent conditions of release," as set forth in the bail package. *United States* v. *Owens*, 541 F. Supp. 3d 102, 118 (D.D.C. 2021) (finding defendant did not pose a risk of dangerousness and granting bail, despite defendant's videotaped actions hitting a police officer with a skateboard at the January 6 riots at the U.S. Capitol).

 Mr. Sensi also poses a diminished risk of recidivism. A 2022 study by the U.S. Sentencing Commission found that the recidivism rate of defendants between the age of 75 and older at the time of sentencing was 9.9 percent, and specifically that the rate of violent recidivism was lower compared to younger offenders. *See* United States Sentencing Commission, *Older Offenders in the Federal System*, at 44, 55 (2022), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Older-Offenders.pdf. While Mr. Sensi recognizes that the Indictment arises from alleged misconduct while he was at or around seventy-five years old, he respectfully submits that the experience of his recent arrest and detention at the MDC, combined with the proposed conditions of home incarceration, make it extremely unlikely that he would recidivate, let alone in any way that would pose a danger to the community.

 The foregoing evidence, taken together, satisfies Mr. Sensi's burden to rebut any presumption of risk of flight or dangerousness and supports the ultimate finding, under the Section 3142(g) factors, that the proposed bail package represents "the least restrictive . . . condition, or combination of conditions, that will . . . reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(c)(1)(B).

**<u>Mr. Sensi's Medical History and Characteristics Support Release on Bail</u>**

 Section 3142(g) also requires the Court to consider "history and characteristics of the [defendant]" when assessing whether bail is appropriate. This includes the defendant's "physical and mental condition." 18 U.S.C. § 3142(g). This factor strongly favors granting bail. As set forth above, Mr. Sensi's health has rapidly deteriorated during his short time incarcerated at the MDC, in light of the MDC's inability to provide the necessary care for his complex medical conditions. Indeed, the staff at the MDC have apparently recognized this inability, and transferred Mr. Sensi to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, where he has remained bound to a bed with restraints since his arrival on December 24, 2025. These current conditions at ▮▮▮▮▮▮ are equally as alarming and inappropriate as those at the MDC. While Counsel has contacted the Government regarding this transfer and the conditions at ▮▮▮▮▮, the most

COVINGTON

humane outcome for Mr. Sensi is the proposed bail package – home incarceration with electronic monitoring – that will prevent unnecessary medical decline and suffering, and allow him to receive necessary medical care while reasonably assuring his return to court. Such unique circumstances have been recognized by other courts when granting bail, including for defendants with more serious criminal history than that of Mr. Sensi. *See, e.g.*, *United States* v. *Adams*, No. 19 Mag. 87 (MK), 2019 WL 3037042, at *3 (D. Or. July 10, 2019) (granting bail despite presumption of detention given "the finding that [defendant's] extensive and debilitating medical conditions, along with the appropriately restrictive release conditions, cause him to not be a danger to the community or a flight risk"); *Johnston*, 2017 WL 4277140, at *7 (finding that defendant's "urgent need for cancer treatment outweighs the remaining statutory factors and makes limited pretrial release appropriate" and granting bail package that included home confinement with electronic monitoring); *United States* v. *Cordero Caraballo*, 185 F. Supp. 2d 143, 146 (D.P.R. 2002) (granting bail package that included home incarceration and electronic monitoring, "[n]otwithstanding the defendant's apparent dangerousness in this case, [given] his present physical condition is indeed grave and can deteriorate if not carefully treated").

Finally, Counsel notes that transfer back from ▓▓▓▓▓ to the MDC would further jeopardize Mr. Sensi's health. As the Court is undoubtedly aware, numerous Courts in this District and the Eastern District have raised concerns regarding the horrific conditions of detention at the MDC. *See United States* v. *Chavez*, 710 F. Supp. 3d 227, 228–30 (S.D.N.Y. 2024) (describing the conditions at MDC as "dreadful" and noting that the issues with food contamination and hazardous physical conditions were an "ongoing tragedy"); *United States* v. *Morgan*, No. 19 Cr. 209 (RMB) (S.D.N.Y. May 5, 2020), Dkt. 90, Tr. 12-15 (describing the MDC as "dirty," "infested with drugs," and plagued by violence); *see also United States* v. *Boyd*, No. 21 Cr. 486 (SHS) (S.D.N.Y. Feb. 3, 2022), Dkt. 74 (describing overcrowding, staffing issues, and lockdowns at the MDC); *United States* v. *Days*, No. 19 Cr. 619 (CM) (S.D.N.Y. Apr. 29, 2021), Dkt. 35, Tr. 19 (describing MDC conditions as "disgusting [and] inhuman as anything I've heard about any Colombian prison, but more so because we're supposed to be better than that"); *United States* v. *Colucci*, 23 Cr. 417 (GRB) (E.D.N.Y. Aug 5, 2024) (sentencing a defendant to nine months in prison, but ordering that if BOP designated the defendant to the MDC, the Court would vacate the sentence and resentence to home incarceration.).

Counsel has conferred with the Assistant United States Attorney, who indicated that the Government must obtain Mr. Sensi's medical records from the BOP prior to taking a position on this application, and that he would take the necessary steps to obtain such records.

For the foregoing reasons, Mr. Sensi respectfully requests this Court release him under the conditions set forth above. Thank you for your consideration.

Respectfully submitted,

 /s/ Amanda Kramer
Amanda Kramer
Nicholas Mendez
Megan Mers
Adira Levine
Eitan Ezra (*Law Clerk, NY Bar Admission Pending*)

CC: All counsel of record via ECF and email