# COVINGTON

BEIJING   BOSTON   BRUSSELS   DUBAI   FRANKFURT
JOHANNESBURG   LONDON   LOS ANGELES   NEW YORK
PALO ALTO   SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

**Amanda Kramer**

Covington & Burling LLP
30 Hudson Yards
New York, NY 10001-2170
T  +1 212 841 1223
akramer@cov.com

**Via ECF**                                              January 26, 2026

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:  ***United States* v. *Robert Sensi*, 25 Cr. 663 (PGG)**

Dear Judge Gardephe:

Robert Sensi, through Counsel, submits this supplemental letter in reply to the Government's January 21, 2026 supplemental letter in opposition to Mr. Sensi's motion for release, and in further support of Mr. Sensi's December 27, 2025 motion for release on bail.[1]  At the January 16, 2026 conference in this case, the Court identified a list of issues requiring more information before the Court could determine whether the Government has met its burden to detain Mr. Sensi pending trial.  (*See* Dkt. No. 35 ("Tr.") at 4:3–10).  This submission answers the questions directed to the defense and responds to the Government's submission.[2]  Notably, the information contained in the Government's supplemental opposition consists of speculation, hyperbole, and unreliable statements made to the Government's source, and fails to provide sufficient information to respond to the Court's requests, and to satisfy the Government's burden.[3]

---

[1] *See* Dec. 27, 2025 Kramer Ltr. (Dkt. No. 21 ("Def. Mot.")); Jan. 5, 2026 Gov't Ltr. (Dkt. No. 24 ("Opp.")); Jan. 7, 2026 Kramer Ltr. (Dkt. No. 25 ("Reply")); Jan. 21, 2026 Gov't Ltr. (Dkt. No. 33 ("Supp. Opp.")).

[2] In particular, Counsel addresses the allegations regarding Mr. Sensi's marriages and access to identification documents at page 4, *infra*; provides additional detail regarding Mr. Sensi's risk of flight, potential sentences, and international ties at pages 3–6, *infra*; and clarifies considerations regarding the bail package, including Stefano Sensi's electrical business and the availability of additional co-signers at pages 6–7, *infra*.

[3] Counsel for Mr. Sensi has focused this submission on responding to the items raised by the Court in the January 16, 2026 Conference and the Government's opposition.  Counsel incorporates by reference its arguments with respect to Mr. Sensi's limited burden of production (*see* Def. Mot. at 4; Reply at 1–2, 4) and maintains that the evidence Mr. Sensi has proffered with respect to both dangerousness and risk of flight satisfies his burden.  *See United States* v. *Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) ("In a presumption case . . . a defendant bears a limited burden of production—not a burden of persuasion—to (continued...)

**COVINGTON**

Page 2

# I.    Mr. Sensi Does Not Present a Danger to the Community.

The Government's burden with respect to dangerousness requires it to prove, by clear and convincing evidence, that, if released, Mr. Sensi would pose a "continuing threat to the community" that cannot be reasonably mitigated by conditions of release.  *United States* v. *Mattis*, 963 F.3d 285, 292 (2d Cir. 2020); *see also United States* v. *Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).  At the January 16 Conference, the Court directed the Government to, among other things, provide any evidence that Mr. Sensi "had procured weapons and explosives for drug trafficking organizations or terrorist organizations in the past," that Mr. Sensi had been previously involved with the cartel, and that Mr. Sensi had extensive connections to other foreign terrorist organizations.  (Tr. at 5:17–19).  The Government has proffered no actual evidence of such conduct in the past and no evidence of his capacity to engage in such conduct.

At best, the Government's proffered information suggests only Mr. Sensi's willingness to placate CS-1 by appearing to entertain his demands for weapons and narcotics; it is far from clear and convincing evidence that Mr. Sensi has the capacity to actually meet those demands.  The Government's allegation that Mr. Sensi "worked on a deal securing helicopters for the Iraqi government" is supported only by a passing reference in the transcript to Mr. Sensi telling CS-1 that he was "working on something for Iraq.  Helicopters... all kinds of stuff."  (Supp. Opp. Ex. 2 at 26).[4]  The Government cites no evidence to suggest that Mr. Sensi was talking about a real transaction, as opposed to one made up out of whole cloth for the sole purpose of pacifying CS-1.

The Government relies on one conversation involving Mr. Sensi, CS-1, and Teodosio Pabon Contreras, an alleged narcotics trafficker, to support its claim that Mr. Sensi has capacity to obtain weapons and narcotics.  (Supp. Opp. Ex. 6 at 57–58).  The conversation reveals just the opposite.  Mr. Sensi made clear to CS-1 that he had not done any similar type of transaction with Pabon in the past.  (Supp. Opp. Ex. 6 at 56 ("I haven't been able to do anything before.")).  The Government likewise argues, based on photos of weapons allegedly sent by Mr. Sensi to CS-1, that Mr. Sensi "appeared poised to follow through on the weapons deal."  (Supp. Opp. 12).  The photos, however, are evidence of nothing more than Mr. Sensi's ongoing effort to appease CS-1 by telling him what he wanted to hear, regardless of its truth.  One of the photos cited by the Government came straight from the internet; a November 2018 article published by the Argentine newspaper La Nación featured photos of an Argentine firearms manufacturer, one of which was sent by Mr. Sensi to CS-1 with the claim that the photo depicted a Brazilian weapons workshop.  *See* Julia D'Arrisso, *La Única Fábrica de Armas del País Tiene Como Mayor Comprador a EE.UU. y Factura Cada Vez Más* ("The Country's Only Arms Factory Has the U.S. As Its Largest Buyer and Its Revenues Are Increasing"), Lᴀ Nᴀᴄɪóɴ (Nov. 28, 2018), https://perma.cc/Q6L2-8KFT, (attached as Exhibit A).

Ultimately, the Government's submission is far from clear and convincing evidence that Mr. Sensi, either alone or through associates, has acquired weapons or narcotics in the past, that he or others would have been able to acquire the weapons or narcotics requested by CS-1, or that he or others could do so in the future, especially now that he has been indicted.  *See*

---

rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.").

[4] These page numbers reflect the pagination of the Government's consolidated Exhibits.

**COVINGTON**

Page 3

*Chimurenga*, 760 F.2d at 402 (finding that defendant did not present a risk of danger as it was "unlikely that [defendant] would engage in further violent activity in light of law enforcement agents' discovery of the group's plans"); *United States* v. *Paulino*, 335 F. Supp. 3d 600, 616 (S.D.N.Y. 2018) (finding defendant's dangerousness risk was mitigated given that "a criminal enterprise would want nothing to do with a non-essential member being monitored by the Government").

Even if the Government's evidence provides some support for concerns about prospective dangerousness, which it does not, the Government still has not carried its additional burden to establish that such a threat cannot be reasonably mitigated by conditions of release. For example, if the Court finds Mr. Sensi's alleged contact with Mr. Pabon raises a dangerousness concern, this concern is mitigated by the proposed bail package, which includes home confinement with limits on Mr. Sensi's ability to contact unapproved individuals. Other courts in this District have found such conditions reasonable to mitigate dangerousness caused by far more direct criminal relationships than Mr. Sensi's alleged connection to Mr. Pabon. *See, e.g.*, *United States* v. *Esposito*, 309 F. Supp. 3d 24, 31 (S.D.N.Y. 2018) (finding that "the danger [a senior Genovese family crime boss] poses to the community can be reasonably mitigated by conditions of release that will effectively cut him off from his alleged criminal associates and take away his ability to orchestrate criminal activities"); *Paulino*, 335 F. Supp. 3d at 604–05 (finding home incarceration sufficiently mitigated dangerousness arising from defendant's membership in the Trinitarios). Device monitoring is also routinely used to cut off defendants from making dangerous communications, including frequently in sex crimes cases, and the Government has previously acknowledged that the Office of Probation and Pretrial Services possesses software that "allows [it] to monitor . . . everything [a defendant] does on his phone, computer[,] or any other electronic device." *United States* v. *Rubel*, 823 F. App'x 1, 5 n.6 (2d Cir. 2020) (summary order); *see, e.g.*, *United States* v. *Arzberger*, 592 F. Supp. 2d 590, 593–94 (S.D.N.Y. 2008) (granting bail for defendant charged with child pornography offenses on the condition, *inter alia*, that "he permit the Pretrial Services Office to monitor his computer use"). The Government has produced no evidence undermining the premise that similar restrictions would reasonably assure the Court that Mr. Sensi does not pose a danger to the community.

## II.    Mr. Sensi Does Not Pose A Risk of Flight.

The Government's additional evidence falls far short of establishing that Mr. Sensi poses a flight risk.

First, Mr. Sensi does not have assets, let alone substantial assets. The Government provides no evidence to address the Court's observation that Mr. Sensi could allegedly have the capacity to arrange for the laundering of money without having substantial financial assets himself. (*See* Tr. 7:6–9). The Government concedes that Mr. Sensi does not have any substantial traditional banking assets to facilitate the transactions, and the Government's evidence does not suggest that Mr. Sensi had a cryptocurrency wallet. Rather, the Government's evidence suggests only Mr. Sensi's alleged role as a broker in relatively unsophisticated money laundering transactions that involved the conversion of CS-1's U.S. dollars into dollar-equivalent

**COVINGTON**

Page 4

stablecoins via a hawala-type money transfer.[5]  (Supp. Opp. at 6–8).  Nowhere in the
Government's submission is there any indication that Mr. Sensi has, or is able to draw on,
substantial financial assets that existed independently of the Government funds provided by
CS-1.  The Government's speculation is not evidence and should carry no weight.

Next, the Government provides no evidence that Mr. Sensi has any ability to acquire
false identification documents; nor is undersigned Counsel aware of Mr. Sensi possessing any
ability to acquire false identification documents.  The Government has not alleged that Mr. Sensi
travelled using anything other than legitimate travel documents, nor is undersigned Counsel
aware of Mr. Sensi possessing any travel documents other than the passport currently in the
Government's possession.  Indeed, while Mr. Sensi has lived abroad[6] and recently traveled
abroad, he has done so legally, on commercial airlines, using valid legal documents, and without
any efforts to conceal his identity or whereabouts.

The Government also appears to abandon its unsupported claim that Mr. Sensi may have
simultaneous marriages.  (*See* Supp. Opp. at 13 n.14).  While Mr. Sensi has been previously
married twice, each of these marriages ended in divorce.[7]

Mr. Sensi is a U.S. citizen with no lawful residence status or citizenship in Colombia or
Bolivia, where his wife and one of his sons are presently located, respectively.  Both Colombia
and Bolivia require a U.S. passport for entry, which Mr. Sensi has surrendered.  Further, Mr.
Sensi has no right to automatic or immediate citizenship in Colombia or Bolivia through his wife
or son; he could not obtain safe passage simply by visiting these countries' embassies.[8]  Both

---

[5] Contrary to the Government's characterization, stablecoin cryptocurrency transactions are common in
Bolivia, due to economic instability and inflationary concerns with the local currency.  *Bolivia Crypto
Transactions Up Over 530% Amid Currency Woes*, REUTERS (June 27, 2025),
https://www.reuters.com/sustainability/boards-policy-regulation/bolivia-crypto-transactions-up-over-
530-amid-currency-woes-2025-06-27.  Indeed, the Bolivian government recently announced reforms that
would formally incorporate cryptocurrency transactions into the Bolivian economy.  *Bolivia Integrates
Crypto to Modernize Economy Amid High Inflation*, MARKETS.COM (Nov. 26, 2025),
https://www.markets.com/news/bolivia-embraces-crypto-for-economic-modernization-2780-en.

[6] Counsel understands that Mr. Sensi lived in Italy only as a teenager, where he attended high school and
studied opera for a year-and-a-half.  Counsel further understands that: (i) Mr. Sensi lived for short
periods of time in Bolivia in the 1990s, for work and because he got married and had a child (Steven
Sensi), and more recently in or around 2023 and 2024, as his second wife moved back from the United
States to Bolivia; (ii) Mr. Sensi lived for a short period of time in Colombia between 2017 and 2019, when
his second wife was studying in Bogota; and (iii) that Mr. Sensi did not live in Ecuador, but rather traveled
intermittently to the country for work between 2018 and 2025.

[7] Mr. Sensi's first and second wives are Bolivian and each resides in Bolivia.  Mr. Sensi's current wife,
Paola Ruiz Sosa, is Colombian and is presently in Colombia.  Counsel also understands that Mr. Sensi was
in two long-term partnerships, but that these were not legal marriages, and that they have also concluded.

[8] *Nationality: Adopting and Acquiring Colombian Citizenship*, CANCILLERÍA, MINISTERIO DE
RELACIONES EXTERIORES DE COLOMBIA, https://www.cancilleria.gov.co/en/nationality-0 (last
(continued...)

**COVINGTON**

Page 5

countries are parties to extradition treaties with the U.S. and have recently extradited individuals to the U.S. *See, e.g.*, *Maximiliano Davila-Perez, Former Head of Bolivian Anti-Narcotics Agency, Extradited to the United States from Bolivia on Cocaine Importation and Firearms Charges*, U.S. ATTORNEY'S OFFICE, SOUTHERN DISTRICT OF NEW YORK (Dec. 13, 2024), https://www.justice.gov/usao-sdny/pr/maximiliano-davila-perez-former-head-bolivian-anti-narcotics-agency-extradited-united; *Extradited Colombian National Sentenced to 14 Years in Prison for Conspiring to Import Cocaine into the United States*, U.S. ATTORNEY'S OFFICE, SOUTHERN DISTRICT OF NEW YORK (Apr. 11, 2024), https://www.justice.gov/usao-sdny/pr/extradited-colombian-national-sentenced-14-years-prison-conspiring-import-cocaine.

The fact that Mr. Sensi has family members with ties to Latin America is no different from other cases in which courts have granted bail with conditions to individuals who had far more significant ties to foreign countries. *See, e.g.*, *United States* v. *Hanson*, 613 F. Supp. 2d 85, 87, 88–91 (D.D.C. 2009) (finding that surrender of travel documents and GPS monitoring, among other conditions, mitigated flight risk for a defendant with Chinese citizenship and extensive family, property, and financial ties to China, history of living abroad, and the resources to flee); *United States* v. *Karni*, 298 F. Supp. 2d 129, 130, 132–33 (D.D.C. 2004) (finding similar bail conditions mitigated flight risk for defendant with no ties to the United States, and strong ties to South Africa and Israel). With respect to Mr. Pabon, the Government again provides no evidence that Mr. Sensi has actually received help from Mr. Pabon in the past or that Mr. Pabon would be likely to have contact with Mr. Sensi in the future given his public indictment and the likelihood that Mr. Sensi's devices would be accessible to Pretrial Services. *Cf. Paulino*, 335 F. Supp. 3d at 616 (observing that the Trinitarios' further contact with a defendant out on bail was unlikely where such contact "would bring unwanted attention from law enforcement with no real benefit to the gang"). These conditions, combined with restrictions on approved contacts, electronic monitoring of his devices, and the Pretrial Services Office's ability to search his apartment, would reasonably address any concerns about flight that arise from these contacts.

Mr. Sensi simply does not have the wherewithal to flee in light of his deteriorating health. Counsel will not repeat the prior briefing, which has addressed Mr. Sensi's many medical issues. The fact that Mr. Sensi was able to travel on comfortable commercial flights with rides to and from the airport does not mean that he is capable of surreptitious travel requiring evasion of law enforcement under physically challenging conditions. That is particularly the case where he has sustained falls in custody such that the MDC insisted on transferring him to the full-time care of a hospital.

Mr. Sensi's past record of compliance with bail conditions further undermines the Government's ability to establish risk of flight and favors his release on bail. Mr. Sensi has been involved in two white collar criminal cases in the past 40 years, and in each case Mr. Sensi was

---

accessed Jan. 26, 2026) (noting that foreigners, including U.S. citizens, must have resided continuously in Colombia for two years if the foreigner is married to a Colombian national, or if he/she is the permanent partner of a Colombian national); BOLIVIA CONST. OF 2009, art. 142 § 2 (Requirements For Naturalization), https://nniconstitutions.arizona.edu/sites/default/files/2021-11/BOLIVIA.pdf (noting that individuals with a Bolivian child must reside in Bolivia for two years).

**COVINGTON**

Page 6

released on bail and complied fully with the conditions of his bail. *See* Exhibit B at 2–3 (*United States* v. *Philips*, et al., No. 94 Cr. 83, Dkt. Nos. 2, 31 (W.D. Okla. Sep. 26, 1994)); Exhibit C at 3–4 (*United States* v. *Sensi*, No. 86 Cr. 318 (D.D.C. Sept. 18, 1986)).[9] The lengthy term of imprisonment required upon conviction for the charged offenses also has no material impact on the risk of flight in this case. As a 75-year-old with several chronic and serious health conditions, including prior strokes, sadly, Mr. Sensi is not optimistic about his life expectancy. Accordingly, the Court should not give meaningful weight to the mandatory minimum term of imprisonment in assessing Mr. Sensi's realistic risk of flight.

Stefano Sensi, a successful small business owner and devoted son, would be a co-signor with significant financial security and moral suasion, and further mitigate any risk of flight. The Government's sole critique of Stefano Sensi as a co-signor (that he is his father's son) – raised for the first time on January 21 – is of no moment. *See Paulino*, 335 F. Supp. 3d at 617 n.4 (rejecting the Government's suggestion that the fact that defendant's "family members were previously inadequate to deter him from criminal conduct" should preclude him from home incarceration in a different setting in which he resided prior to his arrest). With respect to his business, Sensi Electric LLC, and his residence, Stefano Sensi is willing to execute an agreement pursuant to 18 U.S.C. § 3142(c)(1)(B)(xi) "to forfeit upon [Robert Sensi] failing to appear as required, property of a sufficient unencumbered value," as the Court deems necessary (*i.e.*, the amount of the person recognizance bond), and "provide the court with proof of ownership and the value of the property along with existing encumbrances as the judicial office may require." *Id.*[10] The specific procedures for forfeiture are set forth in Fed. R. Crim. P. 46(f), which details the process for default judgment. *Id.* Rule 46(f) sets forth the procedure governing bail forfeiture in practical terms, including the process for default judgment against Stefano Sensi and Sensi Electric LLC that could permit forfeiture of the business's assets or garnishment of the business's income.

Ultimately, the Government has failed to provide meaningful information or evidence to meet the Court's various requests and substantiate the Government's contentions that Mr. Sensi poses a serious risk of flight that cannot be addressed with a combination of conditions of release. Counsel respectfully asks the Court to disregard these unsupported and vague allegations, which are insufficient to satisfy the Government's burden, and consider Mr. Sensi's actual risk of flight in light of his demonstrated history of appearance on bail, physical condition and medical issues, and ties to his community in South Florida.

### III. There Are Less-Restrictive Conditions that Reasonably Address Concerns Regarding Dangerousness and Risk of Flight.

Even assuming that the Government has met its burden to establish dangerousness or risk of flight, which it has not, the Government must also prove that there is no condition or set of conditions that could reasonably address such factors. *United States v. Awadallah*, 173 F.

---

[9] Exhibit B was included as an Exhibit to Defendant's Reply (Dkt. No. 25) and is reproduced here for the Court's ease of reference.

[10] Stefano Sensi is prepared to provide the Court with enumerated information regarding Sensi Electric LLC, including its yearly revenue and the value of its financial assets, accounts receivable, tools and equipment, and parts and materials.

**COVINGTON**

Page 7

Supp. 2d 186, 190 n.13 (S.D.N.Y. 2001) (noting that "[t]he law requires reasonable assurance but does not demand absolute certainty, which would be only a disguised way of compelling commitment in advance of judgment"). Put differently, the Government's burden is to establish that there are no less-restrictive conditions than detention in order to prevail.

For its part, the Government does not meaningfully engage with Mr. Sensi's proposed bail conditions that would restrict his ability to contact unapproved individuals and subject Mr. Sensi's devices and apartment to monitoring and inspection by Pretrial Services. These are not bespoke or novel conditions, and similar arrangements have been found reasonable by other courts when approving bail packages in cases where the Government has raised similar concerns about criminal acquaintances. *See, e.g.*, *Esposito*, 309 F. Supp. 3d at 31–32 (Genovese crime family); *Paulino*, 335 F. Supp. 3d at 612–20 (Trinitarios). Mr. Sensi is not, as the Government suggests, simply "ask[ing] the Court for its trust that he will remain in his home and not remove his GPS ankle monitor." (Supp. Opp. at 15). Mr. Sensi proposes detailed bail conditions that would preclude his ability to contact any unapproved individuals, provide the Government with the ability to continuously monitor him and his devices, and would pose catastrophic financial consequences for not only Mr. Sensi but his immediate family should Mr. Sensi fail to comply.[11] The Government has the burden to establish with evidence that these conditions are unreasonable; the Government cannot do so simply by suggesting the possibility of Mr. Sensi's noncompliance.

Finally, the Government offers no meaningful response to the Court's request for information about less-restrictive alternatives to Mr. Sensi's current conditions of confinement at Carewell Hospital. Notwithstanding the Court's request to provide cases in which inmates had been confined to Carewell for periods of longer than one year, the Government indicates only that several of the inmates at Carewell have been there for months, implicitly conceding that an inmate's stay at Carewell for durations of a year or longer would be exceptional. (Tr. at 10:25–11:1–4; Supp. Opp. at 14–15). Indeed, the Government's only specified case supports a conclusion that yearlong stays at Carewell are extraordinary. (Supp. Opp. at 15). In that case,

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

These circumstances are clearly different from those of Mr. Sensi. ████████████
███████████████████████████████████████████████████████.
In Mr. Sensi's case, the Government concedes that there is no medical need to confine him to a hospital bed for treatment or rehabilitation, and that Mr. Sensi is largely immobilized due to MDC's view that he presents a "*risk* of falling." (Supp. Opp. at 14 n.18). As both Counsel and the Court have observed, Mr. Sensi's detention at Carewell is likely to result in unnecessary and

---

[11] Both of Mr. Sensi's parents are deceased, as is one of Mr. Sensi's two brothers, and Counsel understands that the majority of Mr. Sensi's aunts, uncles, and cousins live in Italy, from which country both of his parents had direct ties. Mr. Sensi could develop a list of additional potential co-signers should the Court require.

**COVINGTON**

Page 8

accelerated deterioration of his mobility and increases in comorbidities.[12]  The Government's suggestion that Mr. Sensi, who can walk, should be treated similarly to one ████████████, misses the point.[13]  Rather, ██████████ case is relevant insofar as it is a cautionary example of the catastrophic, permanent health consequences that can arise out of the Government's inability to provide proper care while an individual is detained pending trial.  It cannot be the case that the least-restrictive condition of pretrial detention is one in which Mr. Sensi may face permanent mobility loss.  Mr. Sensi is presumed innocent and should not bear the adverse physical consequences of the Government's inability to care for him while he awaits trial.

For the foregoing reasons, incorporating those set forth in Mr. Sensi's December 27, 2025 and January 7, 2026 submissions, Mr. Sensi respectfully requests that the Court grant his motion for release from custody, pursuant to the proposed bail package.

Respectfully submitted,

/s/ Amanda Kramer
Amanda Kramer
Nicholas Mendez
Megan Mers
Adira Levine
Eitan Ezra (*Law Clerk, Bar Admission Pending*)

*Counsel for Defendant Robert Sensi*

CC:  All counsel of record via ECF

---

[12] Counsel understands that Mr. Sensi has recently developed an upper respiratory issue that could be consistent with atelectasis, for which Mr. Sensi is at increased risk due his confinement "in bed over a long time and not having enough changes in position."  *Atelectasis*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/atelectasis/symptoms-causes/syc-20369684 (last visited Jan. 26, 2026).

[13] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████